United States District Court
Southern District of Texas

**ENTERED**

April 02, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARZOU H.[1], | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-228 |
| | § | |
| JOSEPH FREDEN, *et al.*, | § | |
| *in their official capacities* | § | |
| Respondents. | § | |

## REPORT AND RECOMMENDATION

### I.   Synopsis

Before the Court is Petitioner Arzou H.'s "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (Dkt. No. 1) and Respondents' "Motion to Dismiss" (Dkt. No. 32). The Court finds that Petitioner's detention period exceeds the presumptively reasonable period set out in *Zadvydas* and that there is no significant likelihood of removal in the reasonably foreseeable future. For the reasons explained below, the Court recommends the Court (1) grant in part Petitioner's Writ for Habeas Corpus; (2) order Petitioner's release from Respondents custody; (3) deny Respondents' Motion to Dismiss; and (4) deny Petitioner's Motion to Expedite as moot.

### II.   Jurisdiction

As a threshold matter, the Court considers its power to decide Petitioner's case because "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024). Additionally, the "federal courts are under an independent obligation to examine their own jurisdiction." *United States v. Hays*, 515 U.S. 737 (1995); *see also*

---

[1] Due to significant privacy concerns in immigration cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to Petitioner's last name using only the first initial.

*United States v. Pedroza-Rocha*, 933 F.3d 490, 493 (citing *Bass v. Denney*, 171 F.3d 1016, 1021 (5th Cir. 1999)).

In the present case, Petitioner challenges the constitutionality of her post-removal-period detention by arguing that the Government has not shown there is a significant likelihood of her removal in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution."). Petitioner does not challenge the validity of her order of removal.

Given Petitioner's constitutional challenge to post-removal-period detention, the Court has subject matter jurisdiction to entertain this claim. Below, the Court discusses its reasons for finding that the Court should deny Respondents' Motion to Dismiss for lack of subject matter jurisdiction.

### III.    Venue

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." *See Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 495 (1973). Petitioner was detained at El Valle Detention Center in Raymondville, Texas when the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 was filed. Dkt. No. 4. The Center lies within Willacy County, a county served by the Brownsville Division of the United States District Court for the Southern District of Texas. Accordingly, venue is proper in this Court and division, because it is where Petitioner's civil detention occurs.

### IV.    Factual History

Petitioner was born in Iran. Dkt. No. 32-1 at 2. She was admitted to Canada as a refugee on December 4, 1992. *Id.* In February of 1996, U.S. Border Patrol agents arrested Petitioner after she attempted to enter into the United States via the U.S.-Canada border. *Id.* Petitioner was issued an Order to Show Cause and placed in deportation proceedings.

*Id.* at 3. An Immigration Judge in New York ordered Petitioner be deported "in absentia" to Germany after Petitioner failed to appear for a master calendar hearing on May 10, 1996. *Id.* Petitioner's order of removal became "final" immediately upon entry of this order. 8 C.F.R. §§ 241.1, 1241.1(e).

In May 1999, Petitioner was taken into immigration custody after being arrested in New York. U.S. immigration officers attempted to return Petitioner to Canada, requesting consent from the Canadian government. *Id.* The request was denied. U.S. immigration officials attempted to deport Petitioner to Germany shortly thereafter, but the German government did not accept Petitioner. *Id.* In October 1999, Petitioner was released from immigration custody on an Order of Supervision. *Id.*

In February 2008, Petitioner was arrested by ICE-ERO in Buffalo, New York after she failed to report. *Id.* She was released from custody on an Order of Supervision again, but this time her release was based on her mental disorder and treatment. Petitioner continually reported to ICE-ERO officers. *Id.*

In 2020, Petitioner was held under New York state custody. *Id.* at 4. Once released from New York state custody, Petitioner was served with another Order of Supervision on February 17, 2021. *Id.* Petitioner reported in 2022 and 2023, but she did not report in 2024. *Id.*

ICE-ERO arrested Petitioner on June 24, 2025.[2] *Id.* Petitioner was then transferred to El Valle Detention Center in Raymondville, Texas. *Id.*

V.      **Procedural History**

    a.   The case was initially filed in the Western District of New York.

Petitioner initially filed the instant case in the Western District of New York and named the Buffalo, New York, Field Office Director for Enforcement and Removal Operations Jospeh Freden as her immediate custodian. Dkt. No. 1 at 6. Petitioner's counsel attached a copy of the search results from the online ICE Detainee Locator system

---

[2] Respondents note that "[t]he officers advised Petitioner that she was subject to a final order of removal and took the Petitioner into DHS custody." Dkt. No. 44-1 at 3, ¶ m.

representing that Petitioner was being held in New York's Niagara County Jail.[3] Dkt. No. 1-3[4].

A few days later, United States District Judge Lawrence J. Vilardo issued an order, which among other things, restrained Respondents from removing Petitioner outside the jurisdiction of the U.S. District Court for the Western District of New York. Dkt. No. 2 at 2. Respondents later informed the Court that Petitioner had been transferred to the El Valle Detention Facility in Raymondville, Texas, on July 3, 2025, one day before the Petition for Writ of Habeas Corpus was filed in federal court. Dkt. No. 4.

Respondents requested the Western District of New York either dismiss the case for lack of jurisdiction because Petitioner was not in the Western District of New York on the day the Petition was filed, or transfer the case to the proper venue. Dkt. No. 5-2. Petitioner filed a response in opposition. Dkt. No. 8. The Court held oral arguments concerning the issue. Dkt. No. 10, 11. Subsequently, Respondents filed a reply, and Petitioner filed a sur-reply. Dkt. No. 12, 14.

The Western District of New York granted the Respondents' Motion to Dismiss in part by ordering the case transferred to the Southern District of Texas. Dkt. No. 18. The Court found that Petitioner had not properly named the respondent and that the Western District of New York was "not the correct one for her petition." Dkt. No. 18 at 6.[5]

    b. The case was transferred to the Southern District of Texas, Brownsville Division.

Upon transfer to the Southern District of Texas, Brownsville Division, the instant case was ordered referred to the undersigned U.S. Magistrate Judge. Dkt. No. 21. Upon initial review of the case, the Court ordered Petitioner to file a supplemental brief demonstrating why the Court has subject matter jurisdiction over the action, and the Court

---

[3] Petitioner stated that she was detained at the Niagara county jail "pursuant to an agreement between ICE and the county sheriff." Dkt. No. 1 at 8.

[4] The copy is dated July 4, 2025, the same day the Petition was filed.

[5] The Western District of New York ordered that its previous order "prohibiting the respondents from removing Hami from the United States remains in place until further order of the judge to whom this case is transferred." Dkt. No. 18 at 7.

ordered Respondents to file under seal a copy of Petitioner's A-file. Dkt. No. 22. Respondents timely complied with the Court's order. Dkt. No. 27. After receiving Petitioner's supplemental brief stating that Petitioner had no further available administrative remedies (Dkt. No. 30), the Court ordered Respondents to file a responsive pleading to Arzou H's Petition. Dkt. No. 31.

> i. *Respondent's Motion to Dismiss for lack of subject matter jurisdiction.*

Respondents filed a Motion to Dismiss Petitioner's request for habeas relief for lack of subject matter jurisdiction. Dkt. No. 32.[6] Respondents argue that Petitioner's continued detention is lawful pursuant to 8 U.S.C. § 1231, because Petitioner is subject to mandatory detention pending her removal. Dkt. No. 32 at 5. Respondents acknowledge that the six-month presumptively reasonable period under *Zadvydas* has passed, but, nevertheless, argue that Petitioner cannot show there is no significant likelihood of removal in the near future. Dkt. No. 32 at 6. In particular, Respondents point out that Petitioner did not present a written claim to ICE concerning the likelihood of her removal under 8 C.F.R. § 241.13. Dkt. No. 32 at 6-7. Additionally, Respondents represented that they were seeking to identify a third country for removal. Dkt. No. 32-1 at 3.

Petitioner filed a timely response in opposition. Dkt. No. 33. Petitioner reemphasizes that there is no likelihood she will be removed and reiterates that her continued detention is unlawful under *Zadvydas*. Dkt. No. 33 at 3. Petitioner points out that at the time of filing the response, Petitioner has been detained for over six months. Dkt. No. 33 at 1. Petitioner also contests that despite Respondents' assertions, they have neither a plan for her removal nor an assertion from a third country stating the country is willing to accept Petitioner. Dkt. No. 33 at 1.

---

[6] Respondents provided a factual summary from a Deportation Officer, which shows in part, that Petitioner failed to report to ICE-ERO in 2024 in accordance with an Order of Supervision served on her in February of 2021. Dkt. No. 32 at 4; Dkt. No. 32-1 at 3.

*ii. Petitioner's Motion for a Temporary Restraining Order.*

About a month later, Petitioner filed an Emergency Motion for a Temporary Restraining Order. Dkt. No. 34. Petitioner requested an injunction to enjoin Respondents from denying Petitioner medical care upon belief that her medications had been denied to her for approximately 12 days at the time of filing. Dkt. No. 34 at 1. United States District Judge Fernando Rodriguez Jr. issued an order declining to issue *ex parte* relief and setting the issue for a hearing. Dkt. No. 35. After the hearing was held discussing the then pending Motion for a TRO, U.S. District Judge Fernando Rodriguez Jr. issued a written order directing Respondents to provide the Court with information concerning Petitioner's medication schedule and their "perceived ability to adhere to Petitioner['s] medication schedule in the future." Dkt. No. 37.

Respondents timely complied with the Court's order. Dkt. No. 38. Pursuant to another Court order issued by U.S. District Judge Fernando Rodriguez Jr., Petitioner filed a statement writing that the Motion for a TRO was rendered moot due to Respondents' compliance with Petitioner's request to receive her necessary medications. Dkt. No. 40. U.S. District Judge Fernando Rodriguez Jr. denied Petitioner's Motion for a TRO as moot and restated that the case "remains referred to a Magistrate Judge to consider the other issues that Petitioner raises in this matter." Dkt. No. 42 at 2.

c. <u>Respondents' most recent status update on Petitioner.</u>

The undersigned U.S. Magistrate Judge ordered Respondents to provide a status update on Petitioner, including any government action regarding Petitioner's continued detention. Dkt. No. 43. Respondents filed a timely status update. Dkt. No. 44. A Deportation Officer declared the following additional facts of note:[7]

- a 180-day memo was sent to serve on Petitioner at the El Valle Detention Facility on December 10, 2025; and

---

[7] The same Deportation officer provided most of the same facts concerning Petitioner which Respondents included in their Motion to Dismiss (Dkt. No. 32) and whose sworn declaration was attached as an exhibit in the motion. Dkt. No. 32-1.

- ERO sent an I-241(Request for Acceptance of Alien) request for third country removals to the United Kingdom, Ireland and Algeria on December 22, 2025.

    d.  Post-Custody Order Review

Respondents began the Post-Order Custody Review in October 2025. Petitioner refused to answer or sign the questionnaire. Dkt. No. 32-2 at 3, ¶ o. ICE-ERO served Petitioner with a Decision to Continue Detention Letter on November 13, 2025. Dkt. No. 32-2 at 3, ¶ p. Petitioner refused to sign the letter. *Id.* A 180-day memo was sent to Petitioner's detention center on December 10, 2025, for Petitioner to review and sign. Dkt. No. 44-1 at 3-4.

**VI.   Applicable Law**

    a.  28 U.S.C. § 2241

The District Court may grant the writ of habeas corpus under 28 U.S.C. § 2241 when Petitioner's custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner must show that his or her custody violates federal law. *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (stating that habeas relief cannot be issued unless Petitioner alleges "that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." (quoting *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985) (per curiam))).

    b.  INA 8 U.S.C. § 1231 and *Zadvydas*

The Immigration and Nationality Act denotes a "removal period" in which the Attorney General "shall remove the alien from the United States within a period of 90 days" when an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). During that 90-day-removal-period, an alien must be detained per the statute. 8 U.S.C. § 1231(a)(2)(A).

The statute is implicitly limited by the "Constitution's demands." *Zadvydas*, 533 U.S. at 689. The "Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person ... of ... liberty ... without due process of law.' " *Zadvydas*, 533 U.S. at 690. This constitutional concern becomes increasingly acute when detention lasts for more than six months. *Id.* at 701. For this reason, the United States Supreme Court created

a framework in *Zadvydas v. Davis* for a Petitioner to challenge the constitutionality of his or her continued detention after a six-month period. *Id. See also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) ("Zadvydas thus created a '6–month presumption' of the validity of detention under § 1231, after which an alien could attack the reasonableness of his continued detention.").

After a six-month period in detention passes, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Id.* It is not the case that if an alien is not removed, then they must be released after six months. *Id.* at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").

If the court determines "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

     c.  <u>Standard of Review: 12(b)(1) – Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party can seek dismissal of an action for lack of subject matter jurisdiction. Subject-matter jurisdiction is inherently a threshold matter. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan*, 111 U.S. 379, 382 (1884)). A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it. *Hartford Ins. Group v. Lou-Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002). Therefore, the plaintiff must constantly bear the burden of proof that subjection matter jurisdiction does exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Inc. Co.,* 243 F.3d 912, 916 (5th Cir. 2001). Therefore, the court's inquiry is whether the plaintiff has met their burden to "allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius¸* 691 F.3d 649, 652 (5th Cir. 2012).

Evaluation of a motion to dismiss for lack of subject matter jurisdiction may be based on: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008); *see also Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). All uncontroverted allegations in the complaint must be accepted as true. *See Den Norske Stats Olijeselskap As*, 241 F.3d at 424. A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A court's dismissal of a plaintiff's case for lack of subject matter jurisdiction is not a determination of the merits and does not prevent a plaintiff from pursuing a claim in a court that does have jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

    d.  <u>8 C.F.R. § 241.13</u>

Federal regulations govern a "[d]etermination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future." Notably, "[a]n eligible alien *may* submit a written request for release to the [Headquarters Post-order Detention Unit] asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1) (emphasis added). *See Tapia v. Watkins*, 2011 WL 13340417 at *1 n.1 (S.D. Tex. 2011) (Morgan, J) (noting that "[t]he vehicle for pursuing an administrative appeal of Tapia's continued detention is phrased in the permissive.").

After receiving the initial written request, the Headquarters Post-order Detention Unit ("HQPDU") conducts a review, which includes, among other procedures, permitting the alien an opportunity to respond and possibly granting an interview with the alien. 8 C.F.R. § 241.13(e)(1-6). HQPDU must issue a written decision regarding "whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances" and provide the decision to the alien. 8 C.F.R. § 241.13(g).

A determination that "there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, despite the Service's and the alien's efforts to effect removal," absent special circumstances defined in the regulation, requires arrangements be made promptly to release the alien subject to "appropriate conditions." 8 C.F.R. § 241.13(g)(1). The regulations spell out the conditions of release. 8 C.F.R. § 241.13(h). A determination that there is a significant likelihood that the alien will be removed in the reasonably foreseeable future results in a denial of the alien's request. 8 C.F.R. § 241.13(g)(2). There is no avenue to pursue an administrative appeal of this denial. 8 C.F.R. § 241.13(g)(2).

## VII.    Analysis

In the present case, Petitioner's current detention has surpassed six months,[8] because Petitioner was detained in late June of 2025.[9] *Andrade*, 459 F.3d at 543. Under *Zadvydas*, Petitioner must provide good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future before the burden passes to the Government. *Zadvydas*, 533 U.S. at 701; *Andrade*, 459 F.3d at 543. The Government contends Petitioner fails to meet her burden, suggesting Petitioner provided only conclusory statements. Dkt. No. 32 at 7.

---

[8] Petitioner's order of removal became final on May 10, 1996. Dkt. No. 32-1 at 2; 8 C.F.R. §§ 241.1, 1241.1(e).

[9] The Court acknowledges that one of the unique factors in Petitioner's case revolves around the fact that she has been "re-detained" by the Government more than once. However, the Court does not reach any finding on whether the prior re-detention periods can or should be aggregated to the six-month-post-removal period when considering a Petitioner's *Zadvydas* claim.

Though Petitioner was unable to ascertain why she was detained in late June of 2025 before filing her Habeas Petition, Petitioner still alleged reasons why "upon information and belief, the Department of Homeland Security does not have any reasonably foreseeable way of removing" her. Dkt. No. 1 at 5, ¶ 11. Petitioner asserted that she is "stateless" and so has no travel documents to allow her entry to her native country of Iran. As such, she faces a particular individual barrier to her repatriation to her county of origin. Additionally, as a "stateless" individual, Petitioner asserts she has no travel documents to any country, impeding her removal to any third country. Petitioner also stated that at the time of her detention the Government had not obtained travel documents for her. These assertions go beyond speculation and conjecture. A look at the undisputed facts substantiates Petitioner's assertions. The Government acknowledges that Petitioner is stateless. Dkt. No. 32 at 7.[10] The Government still has not obtained travel documents for Petitioner, either to her native country or any other country, and is not yet in the process of obtaining those documents.

After reviewing the complaint (Petitioner's Writ for Habeas Corpus) and undisputed facts evidenced in the record, the Court finds Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Now, the Government must "respond with evidence sufficient to rebut" this showing. *Zadvydas*, 533 U.S. at 701.

The Government argues Petitioner's detention is lawful under 8 U.S.C. § 1231, because Petitioner has a final order of removal and has not shown that there is no significant likelihood of removal in the near future. The Government attempts to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future partly because "Petitioner fails to demonstrate compliance with the regulatory provision of 8 C.F.R. § 241.13." Dkt. No. 32 at 7.[11] Petitioner does not contend that she has complied with those regulatory provisions. Nevertheless, Respondents themselves have informed the Court that they are complying with their own regulations. The

---

[10] "Because Petitioner is 'stateless,' Respondents are reaching out to third countries to which Petitioner may be accepted and removed." Dkt. No. 32 at 7.

[11] Respondents do not expressly argue that Petitioner has failed to exhaust her administrative remedies.

Government represents that they "advised the Petitioner that it would be conducting a Post-Order Custody Review" in October of 2025, and they sent Petitioner a "180-day memo." Dkt. No. 44-1 at 3, ¶¶ o, q. Given that the Government is nonetheless conducting the inquiry itself, the Court finds Respondents' argument unpersuasive.[12]

The Government argues that Petitioner's refusal to cooperate in her removal proceedings has extended the length of her detention. To support this claim, the Government cites the statutory provision which allows the removal period to extend beyond 90 days if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C). As noted, the statutory provision may extend the removal period. However, even if the removal period is or was extended[13], the Court relies on Supreme Court jurisprudence, which allows Petitioner to attack the constitutionality of her mandatory detention under §1231 after a six-month period. *Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543.

The Court turns to the Government's most recent status update from March 20, 2026, to review the status of a possible third-country removal for Petitioner. In mid-November 2025, the Government stated its "intentions" to make requests to help it determine which third country might be willing to accept Petitioner. Dkt. No. 44-1 at 3, ¶ p. A little over one month later, on December 22, 2025, "ERO sent an I-241 (Request for Acceptance of Alien) request for third country removals to the United Kingdom, Ireland and Algeria." These

---

[12] The Court notes that 8 C.F.R. § 241.13(d)(1) permits but does not expressly require an alien detained post final order of removal and beyond the 90-day removal period to present her claim to HQPDU. 8 C.F.R. § 241.13(d)(1). Additionally, the Court notes other relatively recent cases where Judges found Petitioner met his or her initial burden without considering whether the Petitioner submitted a written request for release under 8 C.F.R. § 241.13(d)(1): *see Gurung v. Warden, S. Texas Ice Processing Ctr.*, No. SA-25-CA-01614-XR, 2026 WL 93145 (W.D. Tex. Jan. 6, 2026) (J. Rodriguez); *Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026) (J. Pulliam); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025) (J. Saldana); *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705 (W.D. Tex. 2025) (J. Cardone).

[13] The Court does not reach a conclusion on whether Petitioner's conduct can or does constitute failing or refusing to make timey application in good faith for travel or other documents necessary to her departure, or whether her conduct can or does constitute conspiring or acting to prevent her removal subject to an order of removal.

facts before the Court show the Government took action to request acceptance on Petitioner's behalf to a third country about three months ago.

However, under the facts of this case, the Court considers these facts insufficient to demonstrate that there is a significant likelihood the Government will remove Petitioner in the reasonably foreseeable future. *See Mogos v. Thompson*, 2026 WL 475079, at \*4 (finding a Government declaration representing that ICE is actively working to secure removal to a third country did not carry the Government's burden under the facts of the case). The Government's mere request for acceptance, even divided among three countries, does not show Petitioner will be removed in the reasonably foreseeable future. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d at 705 (finding that "Respondents cannot carry their burden [under *Zadvydas*] with the outstanding requests, alone."). The Government has not even stated that the three countries received the request, so the fact that the Government submitted these requests does not make Petitioner's removal seem any more likely to occur in the reasonably foreseeable future. *Gurung v. Warden, S. Texas Ice Processing Ctr.*, 2026 WL 93145, at \*7 (finding the Government's failure to identify a country willing to accept Petitioner particularly weighty "[b]ecause Petitioner cannot be removed to his country of origin . . .").

The Government has requested third countries accept Petitioner since 1999. [14] The Government attempted to remove Petitioner to Canada, where Petitioner resided prior to entering the United States, and to Germany, a country Petitioner had claimed she was once a citizen of before becoming stateless. [15] Those countries denied the Government's request, and Canada even refused twice. Canada first denied the Government's request in May of 1999, because it was untimely. [16] Less than two months later, the German government also refused to accept Petitioner. Still, the Government continued to focus its efforts to return

---

[14] The Court considers Petitioner's immigration history to analyze the unique circumstances of Petitioner's case.

[15] "At the time of her arrest, the Petitioner falsely claimed that she was a citizen of Germany, but had become 'stateless.' " Dkt. No. 32-1 at 2, ¶ d.

[16] "On May 28, 1999, the Canadian government denied the request because the request had not been made within one year of the date of the Petitioner's final order of deportation." Dkt. No. 32-1 at 2, ¶ d.

Petitioner to Canada. Although the Government determined Petitioner still held permanent residence in Canada twenty years later in 2019, Canada still refused to accept Petitioner. Under the facts before the Court, Petitioner does not seem to have any ties to the United Kingdom, Ireland, or Algeria. While removal to these third countries is possible, the Government shows only that they have made requests to these countries. This showing is insufficient to determine that there is a significant likelihood the Government will remove Petitioner in the reasonably foreseeable future.

Under these circumstances, the Court finds the Government did not carry its burden under *Zadvydas*. Moreover, the Court finds there is no significant likelihood of removal in the reasonably foreseeable future in Petitioner's case. Accordingly, Petitioner's detention is unreasonable and no longer authorized by statute. *Zadvydas*, 533 U.S. at 699-700.

Additionally, the Court notes that review of the complaint (Petitioner's Writ for Habeas Corpus) and undisputed facts evidenced in the record has established that Petitioner's detention under 8 U.S.C. § 1231 is unlawful, contrary to Respondents' assertions. For this reason, it is recommended the Court dismiss Respondents' Motion to Dismiss for lack of subject matter jurisdiction.

The Court is mindful that the government has the right to enforce Petitioner's Order of Removal. However, when there is no significant likelihood of removal in the reasonably foreseeable future, it is impermissible for the Government to continue to detain Petitioner indefinitely.[17] Additionally, the Court notes that the choice at issue here "is between imprisonment and supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 698. Considering this, release from detention under the proper release conditions is recommended.[18]

Because the Court recommends granting habeas relief under Petitioner's challenge to her post-removal-period detention, the Court finds no need to address any claim or challenge not addressed in this report and recommendation. *Id.*

---

[17] *See Villanova v. Tate,* 801 F. Supp.3d at 704.

[18] *See Mogos v. Thompson*, 2026 WL 475079, at *6 ("*Zadvydas* requires Petitioner's release from [her] unlawful detention.").

## VIII.  Recommendation

It is RECOMMENDED that the Court (1) GRANT in Part Petitioner's Writ of Habeas Corpus under 28 U.S.C. § 2241; (2) RELEASE Petitioner from detention subject to supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5; (3) DENY Respondent's Motion to Dismiss for lack of subject matter jurisdiction (Dkt. No. 32); and (4) DENY Petitioner's Motion to Expedite as MOOT (Dkt. No. 41).

## IX.    Notice to the Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge assigned to this case. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on April 2, 2026.

Karen Betancourt
United States Magistrate Judge